UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| JULIE BOCOCK, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 4:13-cv-00109-SEB-WGH |
| | ) | |
| MEDVENTURE TECHNOLOGY CORPORATION and BOSTON SCIENTIFIC CORPORATION, | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |
| BARBARA BROWN, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 4:13-cv-00118-TWP-WGH |
| | ) | |
| MEDVENTURE TECHNOLOGY CORPORATION and BOSTON SCIENTIFIC CORPORATION, | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |
| ADRIENNE BURTON, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 4:13-cv-00119-RLY-WGH |
| | ) | |
| MEDVENTURE TECHNOLOGY CORPORATION and BOSTON SCIENTIFIC CORPORATION, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| DELLA CROSS, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 4:13-cv-00110-RLY-WGH |
| | ) | |
| MEDVENTURE TECHNOLOGY CORPORATION and BOSTON SCIENTIFIC CORPORATION, | ) ) ) | |
| | ) | |
| Defendants. | ) ) | |
| | ) | |
| TIANA HARDY, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 4:13-cv-00116-SEB-WGH |
| | ) | |
| MEDVENTURE TECHNOLOGY CORPORATION and BOSTON SCIENTIFIC CORPORATION, | ) ) ) | |
| | ) | |
| Defendants. | ) ) | |
| | ) | |
| ADA HERMANN, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 4:13-cv-00117-TWP-WGH |
| | ) | |
| MEDVENTURE TECHNOLOGY CORPORATION and BOSTON SCIENTIFIC CORPORATION, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| RITA KWASINIEWSKI, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 4:13-cv-00112-RLY-WGH |
| | ) | |
| MEDVENTURE TECHNOLOGY CORPORATION and BOSTON SCIENTIFIC CORPORATION, | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| JUDITH PENN and TABITHA SMITH, *et al.*, | ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 4:13-cv-00108-SEB-WGH |
| | ) | |
| MEDVENTURE TECHNOLOGY CORPORATION and BOSTON SCIENTIFIC CORPORATION, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING, IN PART, AND DENYING, IN PART, PLAINTIFFS' MOTIONS TO LIFT STAY ONLY FOR PURPOSES OF DETERMINING SUBJECT-MATTER JURISDICTION**

This matter is before the Court on the Plaintiffs' motions to lift the stay on these proceedings pending transfer to MDL 2326. The Court, having considered the motions, the parties' filings, and relevant law, and being duly advised, hereby **GRANTS** the motion **in part** and **DENIES** the motion **in part**.

3

## I. Background

This entry addresses eight separate, but essentially identical, products liability lawsuits. Although they were filed as eight distinct actions, all that differentiates them, for our purposes, is the plaintiffs. The defendants, attorneys, motions, briefs, and issues to be considered are indistinguishable.

Each case originated as a products liability suit filed in Clark County, Indiana, between July 5 and July 11, 2013. (*See* Dkt. 16-1 at 1.)[1] Each complaint joins as defendants the Boston Scientific Corporation ("BSC"), which is incorporated in Delaware and operates its principal place of business in Massachusetts, and the MedVenture Technology Corporation ("MedVenture"), which is incorporated in Kentucky and, according to the complaints, operates its principal place of business in Jeffersonville, Indiana. *See id.* at ¶¶ 6–7. Each complaint names as plaintiffs individuals from several states, but at least one plaintiff in each action is alleged to be an Indiana citizen for jurisdictional purposes. *See id.* at ¶¶3–5, App. A. Generally speaking, the Plaintiffs allege that they (or, in some cases, their spouses) were implanted with defective pelvic mesh products manufactured and marketed by BSC and MedVenture. *See id.* at ¶¶ 3–5.

Between August 2 and August 11, BSC removed each suit to this Court, claiming that MedVenture could not possibly be liable under the Plaintiffs'

---

[1] Given the large number of cases included in this opinion, and whereas the documents in each are functionally identical, citations to the record refer to the docket in *Bocock v. MedVenture Technology Corporation*, No. 4:13-cv-00109-SEB-WGH, and to the analogous entry in each other action. (For example, a citation to Dkt. 16, the *Bocock* Plaintiffs' brief in support of their motion to lift the stay, refers also to the Plaintiffs' brief in support of their motion to lift the stay in each of the other seven cases, irrespective of how they are enumerated on the docket.)

4

complaint and that, without a properly joined Indiana defendant, these matters may be heard in federal court by way of diversity jurisdiction. (Dkt. 1). On August 15 and 16, the Court granted BSC's motions to stay each of the proceedings pending their transfer to MDL 2326, a multi-district litigation ("MDL") action created pursuant to 28 U.S.C. § 1407 and placed before the U.S. District Court for the Southern District of West Virginia. (Dkt. 11). To date, MDL 2326 has consolidated nearly 7,000 suits against BSC and involving the same products that form the basis of the Plaintiffs' claims. (Dkt. 10 at ¶¶1-2). As of this entry, a review of the docket in MDL 2326 reveals that MedVenture is named as a defendant only in these eight actions and five others removed from Clark County to this District.

The Plaintiffs in each action now move the Court to lift the stay for the narrow purpose of allowing them to conduct sufficient discovery to support a conclusion that MedVenture is a properly joined Indiana defendant and to support a motion to remand these actions to the Clark County courts for lack of subject matter jurisdiction. (Dkt. 15).

## II. Discussion

The Plaintiffs' motions raise two issues for the Court's consideration. First, the Court must determine whether it can and should lift the stay and resolve the parties' jurisdictional dispute in this Court since a Conditional Transfer Order has already been entered. (Dkt. 12-1). Second, if the Court should decide to resolve that issue here, it must determine a mechanism for doing so.

5

### A. Can—and should—the Court lift the stay and resolve the parties' dispute over subject matter jurisdiction?

The question of whether a court should lift a stay to determine an issue of subject matter jurisdiction in a matter pending transfer to an MDL court has been widely litigated, but it has never been answered by the Supreme Court or the Court of Appeals for the Seventh Circuit, and the district courts' answers have been numerous and far from uniform. The Plaintiffs argue that the Court must lift the stay and resolve the jurisdictional dispute before transferring the action to MDL 2326, citing *Steel Company v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998) for the proposition that a district court must establish subject matter jurisdiction before it can take any action other than dismissing a cause or remanding it to a non-federal tribunal. (Dkt. 16 at 8–9). In response, BSC contends that a court need only establish subject matter jurisdiction if it will later issue a judgment on the merits and that this Court may therefore transfer these cases to MDL 2326 without deciding the jurisdictional issue. (*See* Dkt. 17 at 3–4 (citing *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007))).

Neither *Steel Company* nor *Sinochem* fully controls the question before the Court. BSC is correct in suggesting that *Sinochem* undermines the Plaintiffs' absolute assertion that the Court <u>must</u> determine jurisdiction before transferring these actions to MDL 2326, *see Sinochem*, 549 U.S. at 431, but that is the extent of *Sinochem's* application to these cases. The *Sinochem* opinion reflects that it involved a District Court's dismissal of an action under

6

the doctrine of *forum non conveniens* on grounds that it would be more appropriately resolved by ongoing proceedings in a Chinese tribunal. *See id.* at 425, 426–28 (holding that "a court need not resolve whether it has authority to adjudicate the cause . . . if it determines that, in any event, a foreign tribunal is plainly the more suitable arbiter of the merits of the case"). BSC does not, as in *Sinochem*, seek to transfer these matters out of the federal courts entirely. BSC merely seeks to transfer them to a <u>different</u> federal court. Taken together, *Steel Company* and *Sinochem* counsel that, if one federal court transfers an action to another, one of them must establish federal jurisdiction before either reaches the merits. *See In re: LimitNone, LLC*, 551 F.3d 572, 577 (7th Cir. 2008) (noting that the Supreme Court's holding in *Sinochem* is "consistent with its holding in *Steel Co.*). If MDL 2326 is to reach the merits of these suits, as is BSC's goal, one court or the other first must determine that the federal courts have jurisdiction over the proceedings.

  The Plaintiffs next urge the Court to adopt the approach employed in *Meyers v. Bayer*, 143 F.Supp.2d 1044, 1048–49 (E.D. Wis. 2001), and endorsed by a number of other districts. (Dkt. 16 at 10–12). Rooted in a "jurisdiction-first" mentality and considerations of efficiency, the *Meyers* approach calls on district courts to at least "make a preliminary assessment of the jurisdictional issue" before transferring a case to an MDL court. *Id.* at 1048 (internal quotation marks omitted). For reasons of judicial economy and consistency, a court should transfer the action without first establishing jurisdiction only if identical or similar jurisdictional issues have been raised in other cases that

7

have been or may be transferred to the MDL proceeding. *Id.* at 1049. Where the jurisdictional question is unique to the case at bar, the district court should answer it before transferring the action to the MDL proceeding. *Id.*

The Court finds that the *Meyers* approach is most appropriate in these cases. Although not bound by it, the Court is persuaded by Judge Tinder's application of *Meyers* to a similarly situated matter in our District. *See Kantner v. Merck & Co.*, No. 1:04-cv-2044-JDT-TAB, 2005 WL 277688 (S.D. Ind., Jan. 26 2005).

BSC points to a long list of district court decisions—including many involving pelvic mesh litigation against BSC—taking a different course (Dkt. 17 at 4–5), but the Court is bound by none of them and finds the *Meyers* approach more prudent. In addition to valuing consistency within the District, the Court agrees with Judge Tinder's assessment that it "makes good sense" to establish subject matter jurisdiction before transferring a case to another federal court and that "transfer would be improvident" if the case does not belong in federal court in the first place. *Kantner*, No. 1:04-cv-2044-JDT-TAB, 2005 WL 277688, at *3.

Applying the *Meyers* analysis to the above-captioned matters, the Court finds that the jurisdictional question presented here is likely to be unique and should be resolved before transferring these cases to MDL 2326. Contrary to BSC's argument, the "exact same jurisdictional issues" at question in these actions are not likely to arise in others before the MDL court. (*See* Dkt. 17 at 6). The sole issue for our consideration is whether the Plaintiffs have properly

joined MedVenture, and that question can be answered only by fact-specific inquiry into MedVenture's relationship to BSC and its interaction with the pelvic mesh products that are the subject of this litigation.  Of the roughly 7,000 cases pending before MDL 2326, none originating outside this District involve MedVenture as a defendant.  The Court therefore finds that other cases before the MDL court are unlikely to require resolution of this issue and that consistency can be achieved by the judiciary in our own District.

For the same reasons, the Court is not persuaded that the judiciary (or, for that matter, BSC) will be forced to expend significantly more resources by resolving jurisdiction in this District than it would in the Southern District of West Virginia.  (*See* Dkt. 17 at 5–7).  Because jurisdiction must be established, the resources will be expended all the same; the question is strictly one of where they will be expended.  One court or the other must determine whether MedVenture has been properly joined in these actions and whether they may proceed in federal court, and BSC has not articulated any compelling reason it would be advantageous for the issue to be decided by MDL 2326.  For the reasons stated above, the Court would prefer to decide jurisdiction here before transferring the matters to the MDL court.

### B. How should the Court proceed in resolving the jurisdictional question?

If this Court must determine whether diversity jurisdiction exists, the Court must determine an appropriate mechanism for doing so.  In its Notice of Removal, BSC asserts alternative arguments supporting fraudulent joinder and, therefore, a finding of diversity jurisdiction.  First, BSC posits that the

9

Biomaterials Access Assurance Act of 1998, 21 U.S.C. §§ 1601–06 ("BAAA") forms a complete bar to recovery against MedVenture. (Dkt. 1 at 8–11). Second, BSC argues that the Plaintiffs have failed to state a colorable claim for relief against MedVenture. (*Id.* at 12–16). In either case, says BSC, the doctrine of fraudulent joinder requires MedVenture's dismissal from the proceedings and—because no Plaintiff is from Delaware or Massachusetts—establishes diversity jurisdiction for the remaining claims against BSC.

The fraudulent joinder doctrine prevents a state court plaintiff from naming an in-state defendant for the sole purpose of defeating federal diversity jurisdiction. *Schwartz v. State Farm Mut. Auto. Ins. Co.*, 174 F.3d 875 (7th Cir. 1999). "Fraudulent joinder occurs . . . when there is no possibility that a plaintiff can state a cause of action against nondiverse defendants in state court . . . ." *Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993). To prevail on a fraudulent joinder claim and establish diversity jurisdiction, the removing defendant bears the "heavy burden" of showing that "after resolving all issues of fact *and law* in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant." *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992) (emphasis in original). It is proper for a district court to consider evidence beyond the pleadings in ruling on a fraudulent joinder claim. *See, e.g., Schwartz*, 174 F.3d at 879 (finding no reasonable possibility of liability based on "the law and the facts before" the court); *LeBlang Motors, Ltd. v. Subaru of America*, 148 F.3d 680, 690–91 (7th Cir. 1998) (considering deposition testimony in finding fraudulent joinder).

As its first argument in favor of fraudulent joinder, BSC contends that the BAAA precludes any finding of liability against MedVenture. (Dkt. 1 at 8–11). In short, BSC claims that MedVenture's interaction with BSC and the pelvic mesh products in question render it a "biomaterials supplier" immune from state or federal liability. (*Id.*). In support of this argument, BSC relies on affidavit testimony from Kevin Bramer, MedVenture's President and Chief Executive Officer. (*Id.* at ¶¶ 31–33, 35; Dkt. 1-2.)

In the alternative, BSC contends that the Plaintiffs have failed to state any colorable claim for relief against MedVenture as a matter of Indiana law. (Dkt. 1 at 12–16). BSC argues that the Plaintiffs' products liability and breach of warranty claims are wholly precluded by Indiana's Product Liability Act, IND. CODE 34-20-1 *et seq.* ("IPLA"), and Indiana's version of the Uniform Commercial Code, IND. CODE 26-1-1 *et seq.* ("UCC"). (Dkt. 1 at ¶¶ 40–41). As with its BAAA argument, BSC supports its IPLA and UCC defenses with Mr. Bramer's affidavit. (*Id.*). As to the Plaintiffs' remaining claims of fraud, civil conspiracy, negligent misrepresentation, and loss of consortium, BSC alleges that the complaints fail to articulate any colorable claim for relief under Indiana law and allow for no possibility that the Plaintiffs may state a cause of action against MedVenture. (*Id.* at ¶¶ 42– 45.).

It is important to note that BSC has submitted to this Court an affidavit and has therefore gone beyond merely challenging the pleadings entirely on their face. If this Court is to consider the facts raised by the affidavit, the Court cannot determine the propriety of MedVenture's joinder on the facts

11

presently in the record. To resolve BSC's statutory arguments—those rooted in the BAAA, IPLA, and UCC—the Court cannot rely on facts tendered by one party without allowing the opposing parties to engage in some discovery to test those facts. Whether MedVenture is entitled to avail itself of these statutory protections can be determined only by fact-specific inquiry into MedVenture's interaction with the pelvic mesh products and BSC. Indeed, BSC supports these defenses with Mr. Bramer's affidavit testimony, and to accept that testimony at face value without offering the Plaintiffs an opportunity to test whether the affidavit presents a complete or truthful recitation of facts would cut against the Court's notions of basic fairness.

Without granting BSC's statutory arguments, the Court cannot find fraudulent joinder on the basis of BSC's argument that the Plaintiffs' remaining claims are not colorable under Indiana law. Simply put, even if BSC is correct and each of those claims would be dismissed by an Indiana court, that decision would have no bearing on diversity jurisdiction. As BSC acknowledges in its Notice of Removal, none of the Plaintiffs' allegations singles out MedVenture; all are against "the Defendants," referring jointly to MedVenture and BSC. (*See* Dkt. 1 at ¶ 38 n.5). To find that these claims are not colorable would mean they should be dismissed as to both BSC and MedVenture, leaving MedVenture as a party to every remaining claim. BSC argues that MedVenture has not in fact engaged in any conduct that could expose it to liability on these claims and that "[a] common sense reading of the allegations against 'defendants' show [sic] that they are actually lodged against the manufacturer of the Products,

12

BSC, and not MedVenture." *Id.* This may prove true. However, it is a fact-dependent argument contingent on Mr. Bramer's affidavit testimony, and the Court cannot accept it until discovery has been allowed.

### III.   Conclusion

For the foregoing reasons, the Court **GRANTS** the Plaintiffs' motion to lift the stay **in part** and **DENIES** it **in part** pursuant to the following orders:

1. For the sake of simplicity, and because the actions are identical but for the plaintiffs named therein, the Court will lift the stay as to <u>one</u> of the above-captioned actions for the limited purpose of engaging in discovery sufficient to determine the propriety of MedVenture's joinder in the cause and whether the requirements of diversity jurisdiction have been satisfied.

2. The Court grants counsel for the parties ten days to reach an agreement as to which of the eight cases shall be the subject of the lifted stay. If an agreement is not with the Court after ten days, the Plaintiffs may designate one case, and the Defendants may designate another. Each designation shall be accompanied by a brief not greater than three pages in length addressing why the Court should select that case as the exemplar.

3. Discovery will be completed no later than 45 days after designation of a case for discovery. The Plaintiffs must file a motion to remand within 15 days of the close of discovery, and BSC may file a responsive brief pursuant to the Court's local rule.

4. Should the Court subsequently find that the action must be remanded for lack of subject matter jurisdiction, the Court will lift the stay with respect to the other seven actions and apply the same order to all eight. Likewise, if the Court finds that jurisdiction has been established, it will reinstate the stay as to the designated case and apply the same order to all eight.

**SO ORDERED** the 20th day of September, 2013.

*[signature]*

William G. Hussmann, Jr.
United States Magistrate Judge
Southern District of Indiana

Served electronically on all ECF-registered counsel of record.